## WILLIAM H. LANGHORN JR. V. THE STATE.

### No. 9656.   Delivered December 15, 1926.

### 1.—Murder—Change of Venue—Properly Refused—Rule Stated.

Where, on a motion for a change of venue, predicated upon prejudice against appellant, and evidence is heard by the trial court on the issues joined, ordinarily his determination of the matter will not be disturbed.   In such case Mr. Branch, in Sec. 299 of his Ann. P. C., states the rule as follows:   "Unless it is clear that the trial court has abused or arbitrarily exercised his judicial discretion, his action in refusing a change of venue will be sustained on appeal."   Following Nolard v. State, 3 Tex. Crim. App. 598; Bohanon v. State, 14 Tex. Crim. App. 302.

### 2.—Same—Continued.

Where a change of venue has been refused, and error is assigned in the motion for a new trial to this action of the court in passing upon the motion, it is proper for the court to take into consideration the evidence adduced on the trial, the instant case disclosing that the appellant defended solely upon the ground of insanity, and that a jury was secured out of the first fifty-seven veniremen examined, and that the appellant only used seven of his fifteen peremptory challenges.   Distinguishing Dobbs v. State, 51 Tex. Crim. Rep. 629, and Cox v. State, 234 S. W. 741.

### 3.—Same—Evidence—Harmless, if Error.

Where, on a trial for murder, the appellant admitting the killing and defending alone upon a plea of insanity, the admission of a conversation between appellant while he was under arrest and a witness, who was testifying for the state on the issue of insanity alone, was harmless, if error, even though such conversation may have had some bearing on the guilt of appellant, although the rule in ordinary cases is against the admission of such testimony.   See Hurst v. State, 40 S. W. 264; Cavanar v. State, 90 Tex. Crim. Rep. 449, and Kellem v. State, 238 S. W. 942.

### 4.—Same—Evidence—On Insanity Issue—Of Non-experts—Rule Stated.

Where insanity is interposed as a defense on the trial of a criminal case, the rule as to the admissibility of testimony of non-expert witness is that a non-expert witness, who has shown reasonable opportunity to observe the acts and conduct of the party inquired of, may state that he has never observed anything therein which led him to believe or conclude such party of unsound mind, or abnormal.   While a non-expert witness may not give his opinion upon a hypothetical question, he may testify to actual personal conversations with and observations of the party whose sanity is under investigation, and may be allowed to express his opinion, subject to appellant's right of cross-examination.

### 5.—Same—Evidence—Refusal to Deliver Letter to Appellant—Held Proper.

Where, on a trial for murder, the appellant requested the court to compel the district attorney to deliver to him a letter written by appellant to his father, and which was found near the scene of the homicide, there was no error in the refusal of the court to grant the request.   The letter was not offered in evidence upon the trial, and the state could not be compelled to disclose to defendant before the trial the number or character of letters written by defendant, which were in possession of the prosecution. Following Morrison v. State, 40 Tex. Crim. Rep. 488.

**6.—Same—Requested Charge—On Insanity—Properly Refused.**

Where, on a trial for murder, insanity being plead as a defense, the appellant requested the court to charge the jury that "if he took the life of the deceased, and that at such time his mental and physical faculties were beyond his control, etc., he would not be accountable to the law," such requested charge was properly refused. Our courts do not recognize the doctrine of irresistible impulse, whether mental or physical.

**7.—Same—Requested Charge—Properly Refused.**

Where, on a trial for murder, the appellant defending on his plea of insanity, the state having introduced a written confession of appellant, there was no error in refusing to instruct the jury that if they found appellant insane to not consider the confession. If the jury believed him insane he should have been acquitted, without regard to his confession.

**8.—Same—Requested Charge—Properly Refused.**

Where there was nothing in the court's main charge from which the jury could have inferred that the burden was upon appellant to show insanity, beyond a reasonable doubt, there was no error in refusing a special charge which sought to have the jury instructed that the burden was not upon the appellant to show, beyond a reasonable doubt, that he was insane.

**9.—Same—Argument of Counsel—Not Reversible Error.**

Where, in his argument to the jury, the district attorney said, "Before the lawyers had a chance to get Willie Langhorn crazy, the officers had him examined by reputable alienists who told you that he was sane, and knew right from wrong," and the court, at the request of appellant's counsel, gave the jury a written instruction that they should not consider the argument referred to, no reversible error is shown.

**10.—Same—Argument of Counsel—Replying to Opposing Argument—Not Improper.**

Where complaint is made of the argument of counsel for the state, and appellant's bill presenting the matter is qualified by the court with the statement that said argument was made directly in replying to matters brought out by counsel for appellant and such argument did not appear to transcend the bounds of legitimate reply to the argument so made by the defense, no error is disclosed.

Appeal from the District Court of Fayette County. Tried below before the Hon. M. C. Jeffrey, Judge.

Appeal from a conviction of murder, penalty assessed at death. The opinion states the case.

*John M. Mathis, Sr.; B. F. Teague; Wolters, Story, Blanchard & Wolters,* and *Heidenheimer, Kahn & Branch,* for appellant. On admissibility of non-expert testimony on the issue of insanity, appellant cites:

McLeod v. State, 31 Tex. Crim. Rep. 332.
Ellis v. State, 33 Tex. Crim. Rep. 87.

Williams v. State, 37 Tex. Crim. Rep. 349.
Merritt v. State, 39 Tex. Crim. Rep. 70.
Lee v. State, 43 Tex. Crim. Rep. 287.
Betts v. State, 48 Tex. Crim. Rep. 525.
Henderson·v. State, 49 Tex. Crim. Rep. 512.
Wells v. State, 50 Tex. Crim. Rep. 501.
Sims v. State, 50 Tex. Crim. Rep.. 200.
Hazlewood v. State, 186 S. W. 201.
Gardner v. State, 235 S. W. 897.

*F. J. Kallus,* County Attorney of Fayette County; *Fred L. Blundell,* District Attorney of Fayette County; *Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in District Court of Fayette County of murder, punishment fixed at death.

On the trial of this case no issue in testimony was made by the appellant upon the fact of the killing. It is made to appear from the statement of facts that appellant introduced no witness controverting the state's testimony that he did shoot and kill Valeria Zapalac as alleged in the indictment, and as admitted by him in a voluntary statement made after the homicide. It further appears in several bills of exception that no claim was made by appellant's counsel in argument that he did not kill deceased, but on the contrary that said fact was admitted in said argument, the only contention of the defense being that appellant was of unsound mind at the time he shot and killed said girl.

Bill of exception No. 1 presents complaint of the overruling of a motion for a change of venue sought because of alleged prejudice in the minds of the citizenship of Fayette county, because of which appellant said he could not get a fair and impartial trial. The application for said change of venue, sworn to by appellant, was supported by the affidavits of two compurgators, one of whom made a counter-affidavit on the same date as that of his supporting affidavit, in which counter-affidavit he swore that he signed the supporting affidavit without knowl-edge, that it alleged the existence of prejudice against appellant in said county, and in said counter-affidavit said compurgator states under oath that he knows of no such prejudice in said county, but on the contrary he believed the accused could obtain a fair and impartial trial therein. Save the affidavits of appellant's counsel that said compurgator made the supporting affi-

davit voluntarily and after it was explained to him, the matter of said application was before the court in the condition just referred to. Whether, in view of our statute which requires that there be affidavits of at least two credible persons supporting an application for change of venue, and the holdings in our opinions that one such supporting affidavit is not sufficient (Macklin v. State, 53 Tex. Crim. Rep. 197; Gibson v. State, 53 Tex. Crim. Rep. 349), there was before the trial court such application so supported as to legally present an issue,—is a serious question; but since the court below acted upon the matter as though there was before him a properly supported application, we pass the question, simply calling attention to what might have presented an otherwise serious matter.

The state traversed the application and on the issue evidence was heard and the application denied. In such case Mr. Branch in Section 299 of his Annotated P. C. states the rule as follows: "Unless it is clear that the trial court has abused or arbitrarily exercised his judicial discretion, his action in refusing a change of venue will be sustained on appeal." In the early case of Noland v. State, 3 Tex. Crim. App. 598, it is said that unless it should be made to appear that this discretion has been abused or arbitrarily exercised, to the prejudice of the accused, etc., this court would not be warranted in interfering with the action of the trial court. In Bohannon v. State, 14 Tex. Crim. App. 302, Judge Willson reaffirms this statement with citation of many authorities. See also Carlisle v. State, 90 Tex. Crim. Rep. 1.

We do not attempt to set out at length the evidence heard by the court which is preserved in the bill of exception under consideration. Appellant put on the stand more than forty witnesses developing the publicity given to the homicide by papers of Fayette county, the excitement and general discussion in La Grange, the county seat, etc., etc. Most of these witnesses expressed themselves as being of opinion that there was no such prejudice among the citizenship of said county as would preclude a fair and impartial trial. Some expressed the contrary view. The state introduced about ten witnesses from different parts of the county, all of whom testified that they had extensive acquaintance and that there was no such prejudice in said county as would militate against appellant obtaining the fair and impartial trial guaranteed him by law. The original application for change of venue was presented on the 16th of February, and after hearing same the case was postponed, upon application of the accused, to the 12th of March following, at which time said application for change of venue was renewed

but no new evidence introduced. We have considered this matter carefully and examined as closely as we could all of the testimony of the witnesses, and are unable to bring ourselves to the conclusion, upon this record, that same shows any abuse of the discretion confided in the trial judge in this matter. We note that in considering same in connection with the motion for new trial, it was not inappropriate for the court below to give some weight to the proposition that there was no contest in the testimony of the fact that appellant shot and killed deceased because of her resistance to attacks by him upon herself and her sister, and that the only contest made was whether appellant was of sound mind at the time of the killing, and that upon this issue practically no discussion or prejudgment was shown to have existed or been had in said county; we also think the court might take into consideration the further fact that after the motion for change of venue was overruled a jury was obtained out of the first fifty-seven veniremen summoned, appellant and the state each using only seven of their fifteen peremptory challenges. We find nothing in Dobbs v. State, 51 Tex. Crim. Rep. 629, or Cox v. State, 234 S. W. 741, opposed to what we have just said. The facts shown in the opinions in said cases bearing on the application for change of venue, were vastly different from those in the instant case.

Appellant has a bill of exception to the testimony of witness Lidiak, who was offered by the state to show sanity on the part of appellant and who said he had a conversation with appellant after he was arrested for this crime and while in jail. Witness asked him how he came to tell those girls his name was Willie Coy, and defendant said he was just fooling them; witness had another talk with defendant afterward about his automobiles and appellant said he had two or three cars, one a Buick and another a Ford in which the fatal ride was taken. An objection to this testimony was that it presented matter material to the question of the guilt of appellant and said statements were made while appellant was under arrest and unwarned. There is no question but that the rule in ordinary cases is against the admission of such testimony. Hurst v. State, 40 S. W. 264; Cavanar v. State, 99 Tex. Crim. Rep. 449; Kellum v. State, 238 S. W. 942. If the facts in the instant case showed any contest on the part of the defense of the charge that he killed deceased, the matter would be one of different aspect. When a record shows that there was no such dispute in testimony or before the jury, it would seem that the admission of the statements referred to would necessarily come under the category of harmless error.

In other words, appellant's sworn voluntary statement was in evidence admitting that he killed deceased. The entire record aside from the plea of not guilty evidences agreement on the part of those representing appellant that he did so act. In the absence of any contest over this issue, we cannot see how any injury could have resulted from the introduction of the testimony under discussion.

Bills of exception Nos. 5 to 12 inclusive were taken to the admission of the testimony of a number of non-expert witnesses introduced by the state combating appellant's plea of insanity. Appellant's position in each instance was that the witness had not shown himself to have had that extent and length of acquaintance and observation that would justify the court in letting him testify and give his opinion that appellant was sane. Each of said witnesses testified to personal conversations with and observations of appellant, and each stated the language used in said conversations and some portions of the manner, deportment and appearance of appellant at the time. The strongest objection would lie against the testimony of two of said witnesses who had been with appellant but once and who detailed what he said and did on these occasions and were permitted, after so doing, to say that in their opinion he was of sound mind and knew right from wrong.

This court has often been called upon to decide whether trial courts had exceeded the discretion necessarily confided in them in this regard. It has uniformly said that non-expert witnesses may give their opinion as to the sanity of persons, when this is an issue, if their testimony shows them to have had fair opportunity for forming such judgment, and we have practically said that where the witness bases his testimony on personal conversations with and observations of the accused, this matter must be confided to the wisdom and discretion of the trial courts, and that we will be loath to interfere unless there is a clear abuse of such discretion. Necessarily there can be no exact rule on this point. No two non-expert witnesses will manifest equal knowledge, or show themselves to have had the same opportunities. Hence the necessity for the conclusion announced. If this court should attempt to say that before a non-expert witness should be allowed to give testimony on this point he must have had so much opportunity for observation, or such a length of association, or detail such and such facts with particularity, this would manifestly not fit the cases differing in facts. We said in the case of Shields v. State, 283 S. W. 844, that it is well settled in this state that a non-expert witness, who

has shown reasonable opportunity to observe the acts and conduct of the party inquired of, may state that he has never observed anything therein which led him to believe or conclude such party of unsound mind or abnormal. We also stated that we were unable to draw the fine distinction between the admissibility of a statement by a witness who shows himself to have seen, associated and been with another enough to say that he never heard or saw anything in the words, looks and acts of such other to indicate that he was of unsound mind or abnormal, and the putting before the jury of the same testimony in effect by saying that he was of opinion that the party was of sound mind. While a non-expert witness may not give his opinion upon a hypothetical case, still it seems to us that if he testifies to actual personal conversations with and observation of the party whose sanity is under investigation, he may be allowed to express his opinion subject always to the right of cross-examination so that if the opinion is entitled to slight weight by reason of lack of length of association or opportunity to form the opinion expressed, this may be brought out before the jury. We are unable to agree with appellant's contention appearing in any of these bills of exception.

Appellant complains in bill of exception No. 13 because the trial court refused to compel the state's attorney to deliver to appellant's counsel or to submit to them for their inspection, a letter or document claimed by appellant to have been written some time shortly before the homicide, and which was picked up at some point along the route taken by appellant when pursued by the officers immediately after the killing, which letter or document was addressed to appellant's father and was supposed by appellant to manifest facts tending to support the proposition of his insanity. The most that appellant showed in support of this proposition was that the district attorney had in his possession a document found shortly after the homicide along the route taken by appellant after the killing, which document was addressed to appellant's father, and which document the district attorney stated, when placed on the witness stand for purposes of the bill, was considered by him to be material to the prosecution of appellant in this case or companion cases on file charging him with the murder and rape of a sister of deceased. Whether the district attorney considered same material as bearing on the mental condition of appellant or upon other issues arising, does not appear from the bill.

We are cited to no authority by appellant in support of his contention that the trial judge erred in refusing to compel the

district attorney to let him see this letter. We have explored the avenues of information open to us and find no authority to support said contention. The state would be entitled to use against appellant such document if it contained incriminating evidence, but appellant does not bring himself within any rule requiring the state to deliver to him such a document. The state had not used it or referred to it in the trial in any way. Its relevance or materiality, if any, does not grow out of any connected or partially introduced fact. Whether same contained the incoherent statements of a disordered mind or a statement of some facts showing his purpose or plan to commit the crime charged, are matters about which we are equally in the dark. If appellant wished to have the paper in a regular way, he might have had a subpoena duces tecum for same. None was asked. In Morrison v. State, 40 Tex. Crim. Rep. 488, we said that the state was not compelled to disclose to defendant before the trial the number or character of letters written by defendant which were in the possession of the prosecution. The proposition of injury in this matter is purely a hypothesis. This court does not reverse cases upon speculation.

In addition to the court's regular charge on the question of insanity, he gave appellant's requested charge No. 4, stating in substance and effect that all the testimony of the various witnesses as to the acts and conduct of appellant prior to the date of the alleged killing, and all the testimony introduced as to the conduct, actions and demeanor of appellant was before them for the purpose of aiding them, if same did so, to determine the issue of sanity or insanity at the time of the killing, and that it could be considered for no other purpose whatever. The court's charge on insanity appears to be quite lengthy and to our minds seems to sufficiently present the law of said issue. Appellant sought to have the jury told by his special charge No. 1 that if it was true that he took the life of deceased and that at such time his mental and physical faculties were beyond his control, etc., he would not be accountable to the law. It is not clear to us what an instruction such as this could have meant. Our courts do not recognize the doctrine of irresistible impulse, whether mental or physical. We think the charge properly refused.

Appellant sought also by his special charge No. 2 to have the jury told that if they considered appellant insane, and because of that fact they did not consider the confession introduced by the state, then the case was one of circumstantial evidence. The instruction was properly refused. If the jury

believed the appellant insane he should have been acquitted, and the charge so informed them.

There being nothing in the main charge from which the jury could have inferred that the burden was upon the appellant to show insanity beyond a reasonable doubt, it was therefore not necessary to give special charge No. 3 which sought to have the jury instructed that the burden upon appellant was nòt to show beyond a reasonable doubt that he was insane. We have examined each of the other special charges and do not deem the refusal of any of them to manifest error.

There is a bill of exception taken to the argument of the district attorney. The argument is set out at some length in the bill of exceptions as presented to the court below, but the trial judge approves same with the explanation that no exception was addressed to the argument as set out and that the objection was made as follows: "If your honor please, we desire to take a bill of exception to the untrue remarks of the district attorney that the lawyers got Willie Langhorn crazy." The court further states that the district attorney did not say that the lawyers got Willie Langhorn crazy, but did say "Before the lawyers had had a chance to get Willie Langhorn crazy, the officers had had him examined by reputable alienists who told you that he was sane and knew right from wrong." The record further reflects that at the request of appellant's counsel the court gave the jury a written instruction that they should not consider the argument referred to. We are not impressed with the view that the jury attached such weight to the above statement as to make it show material injury to the rights of the accused.

There is another bill of exception taken to the argument of counsel for the state, but as qualified and explained by the court it shows that said argument was made directly in reply to matters brought out and argued by counsel for appellant and that same did not appear to transcend the bounds of a legitimate reply to the argument so made in behalf of the defense.

We are not unmindful of the fact that in this case the extreme penalty of the law was assessed by the jury in fixing the punishment, and we have given the case as careful and deliberate attention as we have the power to do, but being of opinion that the record manifests no reversible error, the judgment will be affirmed.

*Affirmed.*