## DOYLE ARNOLD v. THE STATE.

No. 17093. Delivered February 13, 1935.

The opinion states the case.

*L. H. Welch* and *Floyd Jones,* both of Breckenridge, for appellant.

*Ben J. Dean,* Dist. Atty., of Breckenridge, *J. R. Black,* Dist. Atty., of Abilene, *F. E. Mitchell,* Co., Atty., of Baird, *Leo Brewster,* Sp. Prosecutor, of Fort Worth, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Zelma Arnold by striking her with a rock.

The opinion on a former appeal is found reported in 62 South Western, Second Series, at page 130. (124 Texas Crim. Rep., 294).

The appeal from the former conviction was from Stephens County, where the homicide occurred. After the reversal of the judgment, the venue was changed to Haskell County, where a mistrial resulted. Thereafter the venue was changed to Callahan County, where the present trial was had.

Deceased, who was the wife of appellant, had instituted divorce proceedings against him. The proof on the part of the State was to the effect that appellant had threatened to kill her the day she secured her divorce. The homicide occurred on a street in the city of Breckenridge. Appellant and deceased were conversing when the lawyer who represented deceased approached. He advised appellant that the divorce had been secured, and he made no reply. Within ten minutes after this occurrence appellant stabbed deceased in the abdomen with a knife, and, seizing a large rock, he beat her brains out. In view of our statement of the case in the former opinion, we deem it unnecessary to set out in further detail the testimony adduced upon the present trial.

Appellant defended on the ground that he was insane, and introduced witnesses in support of his contention. The State took issue with him and introduced many witnesses, among

them being physicians, who testified that in their opinion appellant was sane.

It appears from bill of exception No. 1 that when appellant was placed in jail he would bark like a dog. He introduced proof of his actions and demeanor in support of his contention that he was insane. On one occasion in June while he was in jail appellant was barking and creating a disturbance. The jailor closed the windows, and the next morning found they had been broken. He also found in appellant's cell a window stop about three feet long, which could be used in reaching the windows. Appellant objected to proof of these facts. We think the objection was properly overruled. This proof tended to support the theory of the State that appellant was simulating insanity. See Branch's Annotated Penal Code, sec. 32.

Bill of exception No. 2 presents appellant's objections to the testimony of J. W. Morrow to the effect that he had never seen anything in appellant's acts or conduct that would lead him to believe that he was a person of unsound mind. It is observed that the witness testified that he had had appellant in custody in the Breckenridge jail from the 10th of September, 1932, until August, 1933, during which time he had seen him practically every day. It is well settled that a non-expert witness, who has shown reasonable opportunity to observe the acts and conduct of the party inquired of, may state that he has never observed anything in the acts, speech, demeanor or conduct of such party which were peculiar, or which led the witness to believe or conclude such party to be of unsound mind, or abnormal. Upton v. State, 20 S. W. (2d) 794, and authorities cited. Bills of exception 3, 4, 14, 15, 16, 17 and 19 are in the same attitude as bill of exception No. 2.

Bill of exception No. 5 recites that Gib Abernathy, a witness for the State, testified, over appellant's objection, that during his experience as peace officer he had had an opportunity to observe and to take into custody and have under his control at various times people of unsound mind. We deem the bill to be without merit.

Bill of exception No. 6 shows that the district attorney asked a witness, over appellant's objection, whether deceased was afraid of appellant. The witness answered that he did not know. In view of the answer, we are unable to see how the matter could have prejudiced appellant in any way.

Bill of exception No. 7 relates to appellant's objection to a witness testifying that the rock and knife presented to her

looked like the same rock and knife she had seen in her place of business immediately after the homicide. We think it was proper for the witness to be permitted to identify the rock and knife used by appellant in killing deceased.

It is recited in bill of exception No. 8 that after one of appellant's witnesses had testified touching appellant's insanity, the district attorney asked him "You never filed an insanity charge against him and you never went to the courthouse with the situation until he was charge with murder, did you?" Appellant's objection to the question was overruled, and the witness answered, "It was none of my business to file charges against him." Under the holding in Newton v. State, 26 S. W. (2d) 233, and Brady v. State, 34 S. W. (2d) 587, the question was proper.

We are unable to determine from bill of exception No. 9 whether the matter upon which Mrs. Hattie Staggs was sought to be impeached was immaterial. If we look to the statement of facts, it is observed that she gave testimony on her direct-examination indicating that deceased was a woman of bad morals. On her cross-examination the witness was asked if she had not stated in Haskell during the former trial of appellant that deceased was a good woman. The bill under consideration shows that the witness in whose presence the statement was made was called to testify to same. When considered in the light of the statement of facts, we think the testimony shown in the bill of exception was properly elicited.

Bill of exception No. 10 shows that a witness for the State testified that Mrs. Staggs had testified on appellant's trial in Haskell that deceased "was a sweet woman." The bill is in the same attitude as the foregoing. It fails to present reversible error.

It appears from bill of exception No. 11 that counsel for appellant asked State's witness Mrs. Bess Martin if she had not testified on a former trial, in effect, that Mrs. Eldridge and Johnny Green, her brother, did not have anything to do with her, notwithstanding the fact that they were neighbors; and, further, if she did not testify that none of her neighbors had anything to do with her. The State's objection to the effect that appellant was seeking to impeach the witness upon an immaterial matter was sustained. There is nothing in the bill of exception to show that the inquiry of counsel related to a material matter. If we consult the statement of facts we find that the State's objection was properly sustained. It is well settled that it is not permissible to impeach a witness upon an im-

material matter. Branch's Annotated Penal Code, sec. 165; Evans v. State, 172 S. W. 795.

Bill of exception No. 12 shows that the district attorney asked Mrs. Staggs, a witness for appellant, whether or not at a former trial of the case she remained silent when Mr. Lowe asked her if appellant was crazy. She answered in the negative. It appears that on the present trial Mrs. Staggs testified, in effect, that appellant was of unsound mind. It does not appear that the State followed the matter up by placing Mr. Lowe on the stand. If the question was improper—and this is not conceded—we think the bill fails to reflect reversible error in view of the fact that the matter was not pursued further, and of the further fact that the witness gave a negative answer.

We deem it unnecessary to discuss bill of exception No. 13. It appears to be without merit.

Bill of exception No. 18 shows that Dr. Grover C. Wood, who had had appellant under observation while he was in jail, was permitted to testify, over appellant's objection, that in his opinion appellant was "faking insanity." Proof of his manner, appearance and demeanor during the time he was in jail was made by appellant in support of his contention that he was insane. In Burt v. State, 40 S. W., 1000, we held that where the defendant's manner, appearance and demeanor during the trial have been offered in his behalf as evidence of his insanity, the state may follow with opinion of an expert, who had carefully observed him during the several days of the trial, that he was simulating insanity. Under the authority mentioned, the court was not in error in admitting this testimony.

Bills of exception Nos. 20 and 21 relate to the objection of appellant to the testimony of two physicians to the effect that in their opinion appellant was sane. Both of said physicians had graduated from recognized schools of medicine and surgery, and had had occasion to frequently treat insane people. They had had appellant under observation and had carefully examined him on several occasions during the time he was in jail, and at times they had watched him when he was not aware of their presence. Under the circumstances, we think the trial court was not in error in allowing said witnesses to express their opinion that appellant was sane. See Brady v. State, 34 S. W. (2d) 587; Eckert v. State, 251 S. W., 804.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.